# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JEANETTE K. COAKLEY, et al.,     )
     )
     Plaintiffs,     )
     )
     v.     )     Case No. 1:08-cv-00976 (EGS)
     )
CIGNA GOVERNMENT SERVICES,     )     **ECF**
LLC, et al.,     )
     )
     Defendants.     )
_____)

## <u>DEFENDANTS' MOTION TO DISMISS</u>

The defendants, Michael O. Leavitt, Secretary of Health and Human Services (the Secretary), Kerry Weems, Acting Administrator of the Centers for Medicare & Medicaid Services, Cigna Government Services, and NHIC, respectfully move this Court to dismiss the complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, or, in the alternative, to dismiss all defendants except the Secretary because the Secretary is the only proper party defendant.

The grounds in support of this motion are set out in the accompanying memorandum.

Dated: June 27, 2008     Respectfully submitted,

                     _____/s/_____

                     JEFFREY A. TAYLOR
                     United States Attorney
                     D.C. Bar No. 498610

_____/s/_____

CHRISTOPHER B. HARWOOD
Assistant United States Attorney
United States Attorney's Office
for the District of Columbia
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 307-0372


_____/s/_____

MARK D. POLSTON
Deputy Associate General Counsel
for Litigation


_____/s/_____

JOCELYN S. BEER
Attorney
U.S. Department of Health & Human Services
Office of the General Counsel
Centers for Medicare & Medicaid Services Division
330 Independence Avenue S.W.
Room 5309
Washington, D.C. 20201
(202) 205-3564


OF COUNSEL:

THOMAS R. BARKER
Acting General Counsel

JANICE L. HOFFMAN
Associate General Counsel

United States Department of Health
        and Human Services

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JEANETTE K. COAKLEY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:08-cv-00976 (EGS) |
| | ) | |
| CIGNA GOVERNMENT SERVICES, | ) | **ECF** |
| LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**

Defendants move to dismiss this case pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction. It was brought by four Medicare beneficiaries using a special provision of the Medicare Act that allows beneficiaries to challenge local coverage determinations (LCDs) that adversely affect them. Now that the Secretary has rescinded the challenged portion of the LCDs, this Court lacks jurisdiction to hear the challenge. Indeed, the Court's jurisdiction was doubtful from the outset because the parties contested a critical factual issue: whether the drug levalbuterol is clinically superior to albuterol. The presence of this factual issue precluded the use of the special jurisdictional grant Congress made for purely legal review of LCDs.

Plaintiffs also lack standing to pursue this action since, having received the relief they sought, Plaintiffs no longer are injured by the LCDs. This case is moot for the same reason. Finally, if this Court declines to dismiss this case in its entirety, the Secretary moves to dismiss all other defendants from this case because he is the only proper party defendant.

**STATUTORY AND REGULATORY BACKGROUND**

**A.    Medicare's "Reasonable and Necessary" Standard**

Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 to 1395hhh, commonly known as the Medicare Act, establishes a program of health insurance for eligible aged or disabled persons.  This case concerns Part B of the program, which is a program of supplemental insurance that authorizes payment for non-institutional services and items, such as durable medical equipment (DME), including nebulizers as well as the inhalation therapy drugs used with nebulizers.  *See* 42 U.S.C. § 1395u(o)(1)(G)(ii).  The Secretary administers the Medicare program through the Centers for Medicare & Medicaid Services (CMS), and through contractors known as Medicare Administrative Contractors (MACs).  42 U.S.C. §§ 1395u(a), 1395kk-1(a)(4).  *See* Pub. L. 108-173, § 911(e), 117 Stat. 2386 (2003) (deeming any reference to a fiscal intermediary or carrier under the Medicare Act to be a reference to a MAC).  Defendants Cigna Government Services and NHIC are two of four "DME MACs," that is, MACs that assist the Secretary in administering the Medicare Part B DME program.

"Notwithstanding any other provision of" the Medicare Act, the Part B DME program may not pay for any medical services or items, including drugs, unless they are "reasonable and necessary for the diagnosis and treatment of illness or injury or to improve the functioning of a malformed body member."  42 U.S.C. § 1395y(a)(1)(A); *see also* 42 C.F.R. § 411.15(k)(1) (excluding from coverage any services that are not reasonable and necessary for the diagnosis or treatment of illness and injury or to improve the functioning of a malformed body member).

The Secretary may define what services are considered reasonable and necessary through a variety of means, including regulations, 42 U.S.C. § 1395hh, and National Coverage

Determinations (NCDs).  42 U.S.C. § 1395ff(f)(1)(B).  The Secretary uses "coverage provisions"

in "interpretive manuals" to "further define when and under what circumstances services may be

covered (or not covered)" under the reasonable and necessary standard (manual instructions).

Program Integrity Manual §§ 13.1.2,

http://www.cms.hhs.gov/manuals/downloads/pim83c13.pdf.  DME MACs are required to "apply

coverage provisions" in manual instructions "to claims that are selected for review," and they

may not "deviate from these coverage provisions if absolute words such as 'never' or 'only' are

used."  *Id.*  Administrative law judges (ALJs) and the Medicare Appeals Council are not bound

by manual instructions, 42 C.F.R. § 405.1062(a), although they must "give substantial deference

to these policies if they are applicable to a particular case," 42 C.F.R. § 405.1062(a), and, if they

decline to follow them, they "must explain the reasons why the policy was not followed,"

42 C.F.R. § 405.1062(b).  One such manual instruction interpreting the reasonable and necessary

standard is the longstanding "least costly alternative" (LCA) principle, which states that "where

there exists a reasonably feasible and medically appropriate alternative pattern of care which is

less costly than the [item or service] furnished, the amount payable is based on the reasonable

charge for the [item or service] which meets the patient's needs."  Medicare Benefit Policy

Manual § 110.1.C.3, Pl. Mot. for Prelim. Inj. Exh. E at 5.  The Secretary's authority to use the

LCA principle derives from the "reasonable and necessary" language of 42 U.S.C.

§ 1395y(a)(1)(A).  *See Erringer v. Thompson*, 371 F.3d 625, 631 (9th Cir. 2004) (the manual

provisions "simply interpret the 'reasonable and necessary' standard contained in the statute").

"In the absence of a specific national coverage decision" or other binding policy, most

Medicare coverage decisions "are made at the discretion of the local contractors," 66 Fed. Reg.

at 58,788, *i.e.*, the MACs, using their best medical judgment. When these local policies concern

whether services are "reasonable and necessary" under 42 U.S.C. § 1395y(a)(1)(A), they are

known as "local coverage determinations" or LCDs. The category of "local coverage

determination" was created by Congress in § 522 of the Medicare, Medicaid, and SCHIP

Benefits Improvement Act of 2003, Pub. L. No. 106-554, App. F., 114 Stat. 2763A-463, 2763A-

543 to 2763A-547 (2003). *See also* Program Integrity Manual § 13.1.3.

A LCD is a determination by a MAC "respecting whether or not a particular item or

service is covered" on a contractor-wide basis "in accordance with [42 U.S.C. §

1395y(a)(1)(A)]." 42 U.S.C. § 1395ff(f)(2)(B). *See also* 42 C.F.R. § 400.202. Local coverage

determinations are "administrative and educational tools" that are published by contractors "to

provide guidance to the public and the medical community" to explain "under what clinical

circumstances a service is considered reasonable and necessary." Program Integrity Manual

§ 13.1.3. "The use of an LCD helps avoid situations in which claims are paid or denied without

a provider having a full understanding of the basis for payment and denial." *Id.* § 13.4.

A LCD must be "clear," "concise," "properly formatted," and written so as not to

"restrict or conflict" with NCDs or coverage provisions in interpretative manuals. *Id.* § 13.5.

Contractors must issue an LCD where (a) "they have identified a service that is never covered

under certain circumstances," (b) there is no national coverage determination or other binding

coverage provision that mandates payment or non-payment in the circumstances in question, and

(c) the contractor wishes "to establish automated review" under which claims submitted under

certain codes are automatically denied. *Id.* § 13.4.A. DME MACs must also issue LCDs when

they determine that a covered service or item should be subject to the LCA policy. *Id.* § 13.4.A.

Before issuing a LCD, the MAC must first gather scientific evidence pertaining to the item or service. Program Integrity Manual § 13.7.1. Next, the MAC must provide a comment period of no less than 45 days for any new LCDs, or revisions to existing LCDs that restrict coverage. *Id.* § 13.7.2. During the comment period, the LCD must be posted in draft form on the MAC's website with a clear indication of when the comment period ends. *Id.* § 13.7.4.2. After the comment period ends, the MAC must consider the comments, and post the revised LCD on its website for at least 45 days before implementation. *Id.* § 13.7.4.3. After the notice period closes, the contractor must continue to post any effective LCDs on its website, unless and until the LCD is "retired" if it "has been rendered useless by a new/revised national policy." *Id.* § 13.4.C.

## B.    Judicial Review Under the Medicare Act

Generally, Medicare beneficiaries may not bring challenges to coverage or payment decisions before obtaining the service or drug. *See Heckler v. Ringer*, 466 U.S. 602, 622 (1984). Instead, a Medicare beneficiary usually must first present a claim for reimbursement under Part B to one of the MACs. 42 U.S.C. §§ 1395ff(a)(2), 1395kk-1(a)(4)(A). The MAC determines on behalf of the Secretary whether the claim should be paid and in what amount. 42 U.S.C. § 1395ff(a)(1). If the claim is denied, and the beneficiary wishes to challenge the contractor's initial determination, she must first submit a request for a redetermination, 42 U.S.C. § 1395ff(a)(3), and then a request for reconsideration by a different contractor, 42 U.S.C. § 1395ff(c)(2), and then pursue a hearing before an administrative law judge, 42 U.S.C. § 1395ff(d)(1)(A), and then take a potential appeal to the Medicare Appeals Council of the Departmental Appeals Board (DAB). 42 U.S.C. § 1395ff(d)(2); 42 C.F.R. §§ 405.902,

405.1100-1140. The decision of the DAB, or of the ALJ if the DAB declines to review the

ALJ's decision, is the "final decision" of the Secretary in the matter. 42 U.S.C.

§ 1395ff(b)(1)(A) (incorporating 42 U.S.C. § 405(g)). *See also* 42 C.F.R. §§ 405.1048,

405.1130. The beneficiary may seek review of that decision in federal district court under the

Medicare Act, which sets forth the scope of a court's jurisdiction and a plaintiff's cause of action

for Medicare claims. The Medicare Act explicitly precludes general federal question jurisdiction

under 28 U.S.C. § 1331 for all questions "arising under" the Medicare Act. 42 U.S.C. § 1395ii

(incorporating 42 U.S.C. § 405(h)).

For LCDs, Congress has provided a special exception to this general review process. An

"aggrieved party," that is, a beneficiary who is entitled to benefits, and is in need of coverage for

an item or service that is the subject of a LCD, 42 U.S.C. § 1395ff(f)(5); 42 C.F.R. § 426.110,

may seek review of the LCD before trying to obtain the service or drug by filing a complaint

directly with an administrative law judge (ALJ). 42 U.S.C. § 1395ff(f)(2)(A)(i); 42 C.F.R. §

426.300. The beneficiary may only challenge a LCD that is "currently effective." 42 C.F.R. §

426.325(a). The beneficiary may not challenge retired or withdrawn LCDs, 42 C.F.R. §

426.325(b)(2), or "LCD . . . provisions that are no longer in effect due to revisions or

reconsiderations," 42 C.F.R. § 426.325(b)(3). To support a complaint, the beneficiary must

demonstrate need for the service that is the subject of the LCD with documentation from her

treating physician. 42 C.F.R. § 426.403(c)(3). The beneficiary must also attach any clinical or

scientific evidence supporting the complaint with an explanation of why the beneficiary thinks

this evidence shows the LCD is not reasonable. 42 C.F.R. § 426.403(c)(6).

Congress specified a sweeping scope and standard of review for ALJ review of LCDs. Section 1395ff(f)(2)(A)(i) requires the ALJ to "review the record" and "permit discovery and the taking of evidence to evaluate the reasonableness" of the LCD, if the ALJ determines "that the record is incomplete or lacks adequate information to support the validity of the determination." 42 U.S.C. § 1395ff(f)(2)(A)(i)(I). Congress specifically authorized the ALJ to "consult with appropriate scientific and clinical experts," 42 U.S.C. § 1395ff(f)(A)(i)(II), and directed the ALJ to defer "only to the reasonable findings of fact, reasonable interpretations of law, and reasonable applications of fact to law by the Secretary." The ALJ thus reviews the LCD using a "reasonableness" standard, that is, the ALJ must uphold the LCD if the factual findings or applications of law to fact in the LCD are reasonable, based on the LCD record and the record evidence developed in the review proceedings. 42 C.F.R. § 426.110.

If the beneficiary is dissatisfied with the ALJ decision, she is entitled to seek review by the DAB. 42 U.S.C. § 1395ff(f)(2)(A)(ii); 42 C.F.R. § 426.465. A decision by the DAB constitutes final agency action and is subject to judicial review. 42 U.S.C. § 1395ff(f)(2)(A)(iv). However, if the DME MAC retires or revises the LCD to remove the challenged provision at any point before the ALJ or DAB decision, then the ALJ or DAB must dismiss the case. 42 C.F.R. §§ 426.420(e)(1) (ALJ); 426.478 (DAB).

For beneficiaries challenging LCDs on purely legal grounds, Congress provided a short cut to judicial review. For any "determination that may otherwise be subject to review under . . . paragraph (2)(A)(i)," that is, by an ALJ, the moving party "may seek review by a court of competent jurisdiction without filing a complaint under such paragraph and without otherwise exhausting other administrative remedies," where the moving party alleges that "there are no

material issues of fact in dispute" and "the only issue of law is the constitutionality of a provision of this title, or that a regulation, determination, or ruling by the Secretary is invalid." 42 U.S.C. § 1395ff(f)(3).  Plaintiffs assert that this case arises under this provision.  Compl. ¶ 17.

## FACTS

Levalbuterol is a form of albuterol marketed under the brand name Xopenex.  Generic albuterol is a mixture of left and right handed isomers of albuterol sulfate, while levalbuterol consists of the right handed isomer only.  *See* Sepracor Comments, Exh. F to Pl. Mot. for Prelim. Inj. at 3-4.  Levalbuterol is manufactured by only one company, Sepracor, Compl. ¶ 23, while albuterol has many sources, Compl. ¶ 24.  Both drugs are used in nebulizers to relax the muscles surrounding the airways, permitting patients to breathe easier.  Compl. ¶¶ 23-24.

On March 24, 2006, the DME Program Safeguard Contractors proposed draft LCDs for nebulizers.[1]  The comment period on these draft LCDs closed on May 8, 2006.  The draft LCDs proposed applying the LCA principle to levalbuterol meaning that the MACs would reimburse levalbuterol at the same rate as albuterol.  Pl. Mot. for Prelim. Inj. Exh. H at 7; Exh. I at 6; Exh. J at 8.  Levalbuterol's manufacturer, Sepracor, among others, responded with comments opposing the application of the LCA principle because in its view, levalbuterol is clinically superior to albuterol for the treatment of bronchospasms in patients with chronic obstructive pulmonary disease (COPD).  Exh. F to Pl. Mot. for Prelim. Inj at 3.  CMS reviewed the comments to the draft LCDs, and disagreed with Sepracor's comments regarding levalbuterol.  In its discussion of the comments, which was posted on the CMS website, CMS stated that it did not find a

---

[1]  Prior to March 1, 2008, DME Program Safeguard Contractors could propose LCDs to the DME MACs for their review and consideration.  Program Integrity Manual § 13.1.4.

significant clinical benefit from using levalbuterol instead of albuterol for adult patients in the home setting.[2]

On April 10, 2008, the DME Contractors gave notice that the LCDs would become effective July 1, 2008.  As drafted, the LCDs stated as follows: "The medical necessity for levalbuterol compared to albuterol has not been established.  Therefore, when codes J7612 or J7614 are billed, if coverage criteria are met, payment will be based on the allowance for the least costly medically appropriate alternative - J6711 or J6713 respectively."  *See* Cigna Government Services, LCD for Nebulizers (L5007), Pl. Mot. for Prelim. Inj. Exh. C at 6; NHIC, LCD for Nebulizers (L11499), Pl. Mot. for Prelim. Inj. Exh. A at 6.  (J7612 and J7611 are concentrated doses of levalbuterol and albuterol, respectively; J7614 and J7613 are standard unit doses.)

In December 2007, Congress amended 42 U.S.C. § 1395w-3a.  Medicare, Medicaid and SCHIP Extension Act of 2007, Pub. L. 110-173, § 112 (MMSEA).  As a general rule, section 1395w-3a provides that Medicare will reimburse multiple source drug products in the same billing and payment code at the volume-weighted average of average sales prices (ASP). 42 U.S.C. § 1395w-3a(b)(6)(A).  In general, a "multiple source drug" is a drug, like albuterol, for which there are two or more drug products that are considered to be therapeutically equivalent by the FDA.  42 U.S.C. § 1395w-3a(c)(6).  As amended, section 1395w-3a(b)(7) provides a special rule for each single and multiple source "drug or biological described in § 1395u(o)(1)(G) of this title," that is, an inhalation drug furnished through DME "that is treated

---

[2]  Centers for Medicare and Medicaid Services, "Nebulizers: Response to Comments" at 7, https://coverage.cms.fu.com/lcd_area/lcd_uploads/11499_55/NebulizersResponseto CommentsApril2008.pdf (Exh. K to Pl. Mot. for Prelim. Inj.).

as a multiple source drug because of the application of subsection (c)(6)(C)(ii) of this section."

Subsection 1395w-3a(c)(6)(C)(ii), known as the "grandfathering clause," further defines

"multiple source drugs" as including single source drugs if the single source drugs were in the

same billing and payment code as the multiple source drugs as of October 1, 2003.  Levalbuterol

and albuterol were in the same billing and payment codes as of October 1, 2003 and thus fall

within the ambit of section 1395w-3a(b)(7). *See* Pl. Mot. for Prelim. Inj. Exh. F, Attachment B

(creating separate billing and payment code for levalbuterol as of November 1, 2004).  For those

drugs falling within the ambit of section 1395w-3a(b)(7), the payment amount determined under

that subsection is the lower of the payment amount that would be determined for the drug if

subsection (c)(6)(C)(ii) had been applied (to aggregate the average sales price for both single and

multiple source drugs in the same code) or had not been applied (treating them separately).  42

U.S.C. §§ 1395w-3a(b)(7)(A)(I) & (II) (single source drugs); 1395w-3a(b)(7)(B)(I) & (II)

(multiple source drugs).  This section was enacted because grouping generic albuterol with

branded inhalation drugs had greatly increased the reimbursement rate for the generic.  *See* 153

Cong. Rec. S15835 (daily ed. Dec. 18, 2007) (statement of Sen. Grassley) (the legislation

"establishes appropriate reimbursement rates for generic albuterol").

　　　　After studying the new provisions of section 1395w-3a(b)(7), CMS decided that the

DME MACs should not apply LCA to levalbuterol.  CMS was preparing to issue this decision in

the form of a manual transmittal when Plaintiffs brought this action on June 6, 2008.  On June

11, 2008, instead of issuing the transmittal, the Directors of the CMS Office for Clinical

Standards and Quality (OCSQ) and the Center for Medicare Management (CMM) issued a joint

signature memorandum (JSM) to each of the four DME MACs instructing them to withdraw the

levalbuterol provisions of the LCDs until further notice from CMS.  The June 11, 2008 JSM is attached hereto as Exhibit A.  A JSM is a technical directive that must be signed by the head of two Centers or Offices at CMS.  JSMs usually are not published in the interpretive Manuals, but are available to the public on request.  On June 13, 2008, pursuant to an agreement with Plaintiffs made before this Court, CMS issued a revised JSM to the DME MACs, which is attached hereto as Exhibit B.  The revised JSM states in pertinent part:

> Section 112(b) of MMSEA is drafted to apply to a very specific subset of drugs reimbursed under the ASP methodology.  By its terms, it applies only to those inhalation drugs or biologicals furnished through an item of durable medical equipment that the ASP grandfathering clause affects.  Due to the specificity of section 112(b), and the implications that it may have on how the Centers for Medicare & Medicaid Services (CMS) pays for certain drugs, CMS would like to review this provision further.  *Contractors shall withdraw the least costly alternative (LCA) policies for levalbuterol* and shall take no further action before December 31, 2008.  Contractors shall take no further action thereafter, until receipt of further guidance from CMS.

Exh. B (emphasis added).  As of June 16, 2008, each of the four DME MACs had posted the revised JSM on their websites.[3]  As a result, there is no LCD provision applying LCA to levalbuterol that will go into effect on July 1, 2008, or at any later date.[4]

_____

[3]  Cigna Government Services, Nebulizer LCD -Policy Revision (Jun. 13, 2006), http://www.cignagovernmentservices.com/jc/pubs/news/2008/0608/cope7808html; NHIC, Levalbuterol (JSM/TDL 08351) (rev'd Jun. 16, 2008), http://www.medicarenhic.com/dme/articles/061208_levalbuterol_v2.pdf; National Government Services, Levalbuterol - Correction (Jun. 16, 2008) http://www.ngsmedicare.com/NGSMedicare/DMEMAC/NewsandPublications/WhatsNew/DME MACNews08/ngs_061208_lev.aspx; Noridian Administrative Services, Levalbuterol - Correction (Jun. 13, 2008), https://www.noridianmedicare.com/dme/news/docs/2008/06_jun/levalbuterol_correction.html (accept user agreement related to use of CPT codes to view).

[4]  Should one of the contractors eventually wish to apply LCA to levalbuterol, it would have to offer a new notice and comment period.  *See* Program Integrity Manual § 13.4 (new comment period required for LCA determination); § 13.7.2 (comment period required for new

**ARGUMENT**

**I.    STANDARD AND SCOPE OF REVIEW**

Defendants move to dismiss this case pursuant to Rule 12(b)(1) of the Federal Rules of

Civil Procedure. When a party files a motion to dismiss for lack of subject-matter jurisdiction

under Rule 12(b)(1), "the plaintiffs bear the burden of proving by a preponderance of the

evidence that the Court has subject matter jurisdiction." *Biton v. Palestinian Interim Self-Gov't*

*Auth.*, 310 F. Supp. 2d 172, 176 (D.D.C. 2004). The Secretary submits that the Plaintiffs cannot

meet their burden.

A court reviewing a challenge pursuant to Rule 12(b)(1) may consider documents outside

the pleadings to assure itself that it has jurisdiction. *See Land v. Dollar*, 330 U.S. 731, 735 n.4

(1947); *see also Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987) ("In 12(b)(1)

proceedings, it has been long accepted that the judiciary may make 'appropriate inquiry' beyond

the pleadings to 'satisfy itself on authority to entertain the case.'") (citations omitted); *Artis v.*

*Greenspan*, 223 F. Supp. 2d 149, 152 (D.D.C. 2002) ("A court may consider material outside of

the pleadings in ruling on a motion to dismiss for lack of venue, personal jurisdiction, or subject-

matter jurisdiction.") (citation omitted). Documents outside the pleadings may be considered on

a motion to dismiss pursuant to Rule 12(b)(1) without converting the motion into one for

summary judgment; "the plain language of Rule 12(b) permits *only* a 12(b)(6) motion to be

converted into a motion for summary judgment." *Haase*, 835 F.2d at 905 (emphasis in original).

---

LCDs and revisions to existing LCDs that restrict an existing LCD).

**II.    THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION TO REVIEW A WITHDRAWN LCD UNDER THE MEDICARE ACT OR OTHERWISE**

Because CMS has required the DME MACs to withdraw the provisions in the LCDs for levalbuterol, this Court no longer has jurisdiction over Plaintiffs' challenge to them.  While Medicare beneficiaries generally must incur the costs of treatment and then seek reimbursement, *see Ringer*, 466 U.S. at 622, as discussed above, the Medicare Act provides a limited exception for challenges to local coverage determinations.  Section 1395ff(f)(3) provides for expedited judicial review of a local coverage determination, but only where the challenged LCD would "otherwise be subject to review" by an ALJ under 42 U.S.C. § 1395ff(f)(2)(A)(i).  42 U.S.C. § 1395ff(f)(3).  LCDs that are retired, withdrawn, or no longer in effect are not reviewable by an ALJ.  42 C.F.R. § 426.325(a),(b)(2) & (b)(3).  Thus, the now withdrawn LCD provisions that Plaintiffs challenged in this case are no longer proper subjects of the Court's jurisdiction.

Another judge of this court recently concluded that the court lacked jurisdiction to review a retired LCD under 42 U.S.C. § 1395ff(f)(3).  *Bailey v. Mutual of Omaha Ins. Co.*, 534 F. Supp. 2d 43 (D.D.C. 2008).  In *Bailey*, a beneficiary brought a complaint before an ALJ challenging a LCD for blood glucose testing, but the contractor retired the LCD during the ALJ proceedings, depriving the ALJ of jurisdiction.  534 F. Supp. 2d at 48.  The beneficiary then brought a district court action, alleging that the contractor was continuing to deny claims using the retired LCD.  *Id.* at 49.  The court held that it did not have jurisdiction because "retired LCDs are not otherwise subject to review" by an ALJ "under paragraph 1395ff(f)(2)(A)(i)."  *Id.* at 51.  The court reasoned that since the Secretary's regulations limit ALJ review to "currently

13

effective" LCDs, it equally did not have jurisdiction to hear a claim regarding a withdrawn LCD. *Id.*

Here, as in *Bailey*, there is no LCD for this Court to review, and thus no jurisdiction under 42 U.S.C. § 1395ff(f)(3). In this case, we have revised LCDs, which, like retired LCDs, are also not subject to review under 42 U.S.C. § 1395ff(f)(2)(A)(i). *See* 42 C.F.R. § 426.325(b)(3) (beneficiaries may not challenge "LCD . . . provisions that are no longer in effect due to revisions or reconsiderations"). Since the portions of the LCDs related to levalbuterol have been withdrawn, Plaintiffs' challenge is no longer "otherwise reviewable" through the ALJ process. Indeed, had Plaintiffs brought their challenge before an ALJ, the ALJ would have been required to dismiss the complaint as if the Secretary had determined that the LCDs were unreasonable. 42 C.F.R. § 426.420(e)(1).

Plaintiffs cannot use any other provision of the Medicare Act to bring their challenge. They have not alleged that CMS or its contractors have denied any claims they have presented for levalbuterol, much less that they have exhausted their administrative remedies for any such denied claims. *See* Compl. ¶¶ 3, 5, 7, 9 (Plaintiffs currently receive Medicare Part B coverage for levalbuterol). Consequently, the Medicare Act precludes judicial review of Plaintiffs' challenge to the withdrawn portion of the LCDs. *See* 42 U.S.C. § 1395ff(b)(1)(A) (permitting judicial review of the Secretary's final decision for beneficiaries who are dissatisfied with an initial determination on their claims for benefits).

Plaintiffs also cannot invoke general federal question jurisdiction under 28 U.S.C. § 1331. Under 42 U.S.C. § 1395ii (incorporating 42 U.S.C. § 405(h)), "the sole avenue for judicial review for all 'claim[s] arising under' the Medicare Act," is 42 U.S.C. § 1395ff(b)(1)(A)

14

(incorporating 42 U.S.C. § 405(g)), "to the exclusion of 28 U.S.C. § 1331." *Ringer*, 466 U.S. at

615; *see also Weinberger v. Salfi*, 422 U.S. 749, 756 (1975) ("On its face, this provision bars

district court federal-question jurisdiction over suits" arising under Social Security Act). The

"arising under" language of 42 U.S.C. § 1395ii must be construed "quite broadly" to include any

claims in which "both the standing and the substantive basis for the presentation of the claims" is

the Medicare Act. *Ringer*, 466 U.S. at 615. Thus, where a beneficiary seeks "payment for some

medical procedure," a Medicare contractor denies the claim, and "the individual challenges the

lawfulness of the denial," federal-question jurisdiction is "plainly" barred, "irrespective of

whether the individual challenges the agency's denial on evidentiary, rule-related, statutory,

constitutional, or other legal grounds." *Shalala v. Illinois Council on Long Term Care, Inc.*, 529

U.S. 1, 10 (2000). The same is true where the beneficiary desires "advance knowledge for

planning purposes," *id.*, about whether a "claim for future benefits" could lawfully be denied, *id.*

at 12 (quoting *Ringer*, 466 U.S. at 621-22). So long as the "substantive basis" for the claim is

the Medicare Act, federal-question jurisdiction is precluded. *Id.* (quoting *Ringer*, 466 U.S. at

616, and *Salfi*, 422 U.S. at 760-61 ). "These cases themselves foreclose distinctions based upon

the 'potential future' versus 'actual present' nature of the claim, the 'general legal' versus the

'fact specific' nature of the challenge, the 'collateral' versus 'non-collateral' nature of the issues,

or the 'declaratory' versus 'injunctive' nature of the relief sought." *Id.* at 13-14; *see also Ringer*,

466 U.S. at 614 (looking past "procedural" versus "substantive" labels). Federal question

jurisdiction is precluded where the plaintiff's claim is "inextricably intertwined" with a claim for

benefits, so that it is nothing "more than, at bottom, a claim that they should be paid" for their

claims. *Ringer*, 466 U.S. at 614.[5]  Here, Plaintiffs' Complaint is essentially a request that

Medicare not apply the LCDs but continue to reimburse their claims for levalbuterol using the

average sales price, Compl. ¶¶ 39-41, and the Secretary has instructed the DME MACs to

continue to do so.  If Plaintiffs had a live claim (which they do not, as discussed above), it would

arise under the Medicare Act, and general federal question jurisdiction would be precluded.

**III.   THE COURT LACKS JURISDICTION OVER PLAINTIFFS' CHALLENGE TO
THE LCDS BECAUSE PLAINTIFFS DISPUTE MATERIAL FACTS**

Even if the Secretary, through CMS, had not rescinded the challenged portion of the

LCDs, Plaintiffs still could not bring this challenge before this Court because it is not a purely

legal challenge.  Instead, there is an underlying dispute of material fact over whether Plaintiffs

can use albuterol instead of levalbuterol to treat their medical conditions.  When Congress

created the special LCD review provisions, it provided two avenues for judicial review.  The first

avenue specifically entrusts this kind of scientific dispute to ALJs who are empowered to take

evidence on scientific issues and consult with scientific experts.  42 U.S.C.

§ 1395ff(f)(2)(A)(i)(I) & (II).  After the ALJ determines whether the LCD is reasonable, then the

DAB may review that decision.  42 U.S.C. § 1395ff(f)(2)(A)(ii).  The DAB's decision is "final

agency action" which is "subject to judicial review."  42 U.S.C. § 1395ff(f)(2)(A)(iv).

---

[5] The only exception – where preclusion of federal judicial review "would not simply channel review through the agency, but would mean no review at all," *Illinois Council*, 529 U.S. at 18, obviously does not apply to this case.  If there were an LCD provision to challenge, Plaintiffs could either bring their claims through the LCD review process under 42 U.S.C. § 1395ff(f)(2) or appeal denied claims for reimbursement for levalbuterol under 42 U.S.C. § 1395ff(a)(1)(A).  After exhausting administrative remedies, they could then seek judicial review under either 42 U.S.C. § 1395ff(f)(2)(A)(iv) (to challenge a LCD) or 42 U.S.C. § 1395ff(a)(1)(E)(ii) (to challenge a denied claim).

Congress also provided a second avenue, in which the beneficiary need not pursue her challenge before the ALJ, but may proceed directly to a "court of competent jurisdiction." 42 U.S.C. § 1395ff(f)(3)(B).  However, this second avenue is limited to challenges where there are no material facts in dispute, and "the only issue of law is the constitutionality of a provision of this title, or that a regulation, determination, or ruling by the Secretary is invalid."  *Id.*

In this case, while Plaintiffs assert that they "do not contest any material issue of fact" Compl. ¶ 18, they simultaneously assert that levalbuterol is clinically superior for their medical conditions to albuterol.  Compl. ¶ 22.  With their now withdrawn motion for a preliminary injunction, Plaintiffs submitted comments that the manufacturer of levalbuterol, Sepracor, had made during the LCD comment process asserting the clinical superiority of levalbuterol.  Pl. Mot. Prelim. Inj. Exh. F.  CMS reviewed the comments, and stated that it did not agree with them.  Centers for Medicare and Medicaid Services, "Nebulizers: Response to Comments" at 7, Pl. Mot. for Prelim. Inj. Exh. K.  CMS continues to disagree with them, as indicated in the now withdrawn provision of the draft LCDs.  *See* Cigna Government Services, LCD for Nebulizers (L5007), Pl. Mot. for Prelim. Inj. Exh. C at 6 ("The medical necessity for levalbuterol compared to albuterol has not been established"); NHIC, LCD for Nebulizers (L11499), Pl. Mot. for Prelim. Inj. Exh. A at 6 (same).  Even if the Secretary had not withdrawn the challenged portions of the LCDs, the parties' disagreement as to whether levalbuterol is in fact clinically superior to albuterol for the treatment of COPD is an issue of material fact, and thus would preclude jurisdiction in this Court pursuant to section 1395ff(f)(3).

**IV.    PLAINTIFFS LACK STANDING BECAUSE THEY ARE NOT HARMED BY THE WITHDRAWN LCD PROVISIONS**

Even if this Court had subject matter jurisdiction over Plaintiffs' claims, Plaintiffs' Complaint should be dismissed for lack of standing because Plaintiffs have yet to be injured by the now withdrawn LCD provisions, and future injury is not reasonably likely.  To establish standing, the plaintiff "must allege personal injury traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).  To have standing to seek declaratory and injunctive relief, as Plaintiffs seek here, the plaintiff must show either that the past action has "continuing, present adverse effects," *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 109 (1998) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)), or that there is a "real and immediate threat" that the complained-of action will recur in the future to the plaintiff's detriment, *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 210-11 (1995) (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)).  Plaintiffs here cannot establish either of these elements.

First, Plaintiffs complain solely about the DME MACs' proposal to apply LCA to levalbuterol as of July 1, 2008.  However, the Secretary, through CMS, instructed the DME MACs to withdraw the LCA provisions indefinitely, *see* Exh. B, and the DME MACs published notice of the withdrawal well before July 1, 2008.  Therefore, the Plaintiffs cannot show that any past action continues to harm them.

Nor can Plaintiffs show any "real and immediate threat" that the challenged action will recur in the future, since the DME MACs have been told that they may not apply LCA to levalbuterol prior to December 31, 2008 under any circumstances and thereafter without further

18

action by the Secretary.  *See* Exh. B.  Plaintiffs therefore lack standing to seek an injunction

prohibiting the Secretary and the DME MACs from using the withdrawn provisions of the LCDs.

## V.    PLAINTIFFS' CHALLENGE TO THE WITHDRAWN LCD PROVISIONS IS MOOT BECAUSE THEY HAVE RECEIVED THE RELIEF THEY SOUGHT

Plaintiffs seek to have this Court enjoin the Secretary from applying LCA to levalbuterol

through the LCDs.  Compl. ¶ 1.  The Secretary has since instructed the DME MACs to withdraw

that portion of the LCDs.  Consequently, there is no live case or controversy still before the

Court.  The Supreme Court has held that "[n]o principle is more fundamental to the judiciary's

proper role in our system of government than the constitutional limitation of federal-court

jurisdiction to actual cases or controversies."  *Simon v. E. Kentucky Welfare Rights Org.*, 426

U.S. 26, 37 (1976); *see also Flast v. Cohen*, 392 U.S. 83, 95 (1968).  Under Article III of the

U.S. Constitution, federal courts may adjudicate only actual cases or controversies.  *Deakins v.

Monaghan*, 484 U.S. 193, 199 (1988); *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975).  "Article III

of the Constitution requires that there be a live case or controversy at the time that a federal court

decides the case. . . ."  *Burke v. Barnes*, 479 U.S. 361, 363 (1987).  "This case-or-controversy

requirement subsists through all stages of federal judicial proceedings, trial and appellate . . . .

The parties must continue to have a personal stake in the outcome of the lawsuit."  *Spencer v.

Kemna*, 523 U.S. 1, 7 (1998) (quotations omitted).  As the Supreme Court has emphasized,

"[t]his means that, throughout the litigation, the plaintiff must have suffered, or be threatened

with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial

decision."  *Id.* (quotations omitted)  Mootness has been characterized as "'the doctrine of

standing set in a time frame: The requisite personal interest that must exist at the commencement

of the litigation (standing) must continue through its existence (mootness).'"  *Arizonans for*

*Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (*quoting U.S. Parole Comm'n v.*

*Geraghty*, 445 U.S. 388, 397 (1980)).  "A moot case presents no Article III case or controversy,

and a court has no constitutional jurisdiction to resolve the issues it presents." *Goldin v.*

*Bartholow*, 166 F.3d 710, 717 (5th Cir. 1999).

In this case, nothing remains for Plaintiffs to obtain except an advisory opinion.

However, "[Federal courts] are not in the business of pronouncing that past actions which have

no demonstrable continuing effect were right or wrong." *Kemna*, 523 U.S. at 18.[6]

## VI.    DEFENDANTS CIGNA GOVERNMENT SERVICES, NHIC, AND WEEMS SHOULD BE DISMISSED FROM THIS ACTION BECAUSE THE SECRETARY IS THE ONLY PROPER PARTY DEFENDANT.

Should the Court not dismiss this action entirely for lack of subject matter jurisdiction, it

should dismiss all defendants except the Secretary from this action because the Secretary is the

real party in interest, and the only party in whose name the government's sovereign immunity is

waived under the Medicare Act.

The Plaintiffs commenced this action naming as Defendants two DME MACs, Cigna

Government Services and NHIC, CMS Acting Administrator Weems, and the Secretary.

Plaintiffs asked this Court to enjoin the Secretary from implementing a LCD issued by the two

---

[6] The familiar "capable-of-repetition doctrine," which is often put forward in an attempt to defeat a claim of mootness, only applies "in exceptional circumstances," *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1993), where two circumstances "are simultaneously present: (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Kemna*, 523 U.S. at 17 (quotation marks and alterations omitted).  Plaintiffs cannot meet either requirement.  As discussed above, the DME MACs would have to give advance notice if they were to apply LCA to levalbuterol in the future, allowing Plaintiffs to bring a challenge under 42 U.S.C. § 1395ff(f), but given the Secretary's instruction not to apply LCA until further notice, it is unlikely that Plaintiffs would be subject to the same action again.

DME MACs.  *See* Compl. ¶ 1.  The two DME MACs act as the Secretary's agent in administering the Medicare Part B program.  *See* 42 U.S.C. §§ 1395u(a), 1395kk-1(a)(1). Congress has explicitly charged the Secretary, not the DME MACs, with the responsibility of administering the Medicare program through the Centers for Medicare and Medicaid Services. The Secretary, not the DME MACs, ultimately determines what amounts shall be paid for Part B services and drugs.  *See, e.g.*, 42 U.S.C. § 1395ff(a)(1)(B) ("The Secretary shall promulgate regulations and make initial determinations with respect to benefits under . . . part B for . . . the amount of benefits available to the individual"); § 1395kk-1(a)(4) (MAC determination of payment amount is subject to review by the Secretary).

During the period at issue in this lawsuit, Cigna Government Services and NHIC, pursuant to their contracts with the Secretary, were responsible for, among other functions, ascertaining whether or not services furnished were reasonable or medically necessary.  *See* 42 U.S.C. § 1395kk-1(a)(4) (functions of MACs include developing local coverage determinations).  However, neither DME MAC had any vested interest in any Medicare funds that would or would not have been saved by the issuance of the challenged LCD provisions. Instead, any expenses or savings would have been borne by the Treasury.  *See* 42 U.S.C. § 1395t(g) (Part B payments to be made from Federal Supplementary Medical Insurance Trust Fund); 42 U.S.C. § 1395w(a) (authorizing appropriations from the Treasury for the Federal Supplementary Medical Insurance Trust Fund).

While Congress intended for DME MACs and their predecessors to play a "considerable role" in the Medicare reimbursement program by "carrying on for [the Secretary] the governmental administrative responsibilities imposed by the bill," S. Rep. No. 89-404, *reprinted*

*in* 1965 U.S.C.C.A.N 1943, 1992-1995, it also has understood that the "Secretary, however would be the real party at interest in the administration of the program." *Id.* Congress has authorized the Secretary to indemnify the MACs if they are made a party to any judicial or administrative proceeding under the Medicare Act, 42 U.S.C. § 1395kk-1(d)(4)(A), and the Secretary's regulations explicitly state that the Secretary, and not the DME MACs or other contractors, "is the real party of interest in any litigation involving the administration of the program." 42 C.F.R. § 421.5.

The Supreme Court and several other federal courts have recognized that the Secretary is the real party in interest in litigation involving the administration of the Medicare program. *See United States v. Erika, Inc.*, 456 U.S. 201, 206 n.4 (1982) (quoting 42 C.F.R. § 421.5); *Pavano v. Shalala*, 95 F.3d 147, 148 n.1 (2d Cir. 1996) ("[b]ecause the carriers are authorized agents of the HCFA and, more broadly, the Department of Health and Human Services, *see* 42 U.S.C. § 1395u(a), the Secretary is the real party in interest here, *see* 42 C.F.R. § 421.5(b)."); *Anderson v. Occidental Life Ins. Co.*, 727 F.2d 855, 856-57 (9th Cir. 1984) ("[t]he United States is the real party in interest in actions against Medicare carriers because recovery would come from the federal treasury"); *Peterson v. Weinberger*, 508 F.2d 45, 51-52 n.7 (5th Cir. 1975) (United States is the real party in interest in physician's suit against intermediary to recover withheld Medicare funds and for damages for alleged torts); *see also Matranga v. The Travelers Ins. Co.*, 563 F.2d 677 (5th Cir. 1975) (following *Peterson v. Weinberger*); *Group Health Inc. v. Blue Cross Ass'n*, 739 F. Supp. 921, 932-33 (S.D.N.Y. 1990) (Secretary is the real party in interest and, as such, fiscal intermediary is entitled to sovereign immunity with respect to claims based on negligent misrepresentations). Given the undisputed legal status of the Secretary as the real party in

22

interest in this matter, there is no practical reason or legal basis to maintain Cigna Government Services or NHIC as parties.

Defendant Weems also should be dismissed from this suit because the Medicare Act waives the government's sovereign immunity for suits against the Secretary only.  "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."  *United States v. Mitchell*, 463 U.S. 206, 212 (1983) (footnote omitted).  In this case, the pertinent waivers of sovereign immunity in the Medicare Act are 42 U.S.C. § 1395ff(f)(3) and 42 U.S.C. § 1395ff(b)(1)(A).  Both provide judicial review for the actions of the Secretary, not the CMS Administrator.  Moreover, Acting Administrator Weems is not a necessary party to this action since the Secretary may provide any relief to be given Plaintiffs.  He too should be dismissed from this action.

## CONCLUSION

The Defendants respectfully request that this Court dismiss this action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure because the Court lacks subject matter jurisdiction over the withdrawn provisions of the LCDs, Plaintiffs lack standing, and their case is moot. In the alternative, at minimum, Defendants Cigna Government Services, NHIC, and Weems should be dismissed because the Secretary is the only proper party Defendant.

Dated: June 27, 2008                          Respectfully submitted,


                                              ___/s/_____
                                              JEFFREY A. TAYLOR
                                              United States Attorney
                                              D.C. Bar No. 498610

                                              ___/s/_____
                                              CHRISTOPHER B. HARWOOD
                                              Assistant United States Attorney
                                              United States Attorney's Office
                                              for the District of Columbia
                                              555 Fourth Street, N.W.
                                              Washington, D.C. 20530
                                              (202) 307-0372

                                              ___/s/_____
                                              MARK D. POLSTON
                                              Deputy Associate General Counsel
                                              for Litigation

                                         ___/s/_____
                                         JOCELYN S. BEER
                                         Attorney
                                         U.S. Department of Health & Human Services
                                         Office of the General Counsel
                                         Centers for Medicare & Medicaid Services Division
                                         330 Independence Avenue S.W.
                                         Room 5309
                                         Washington, D.C. 20201
                                         (202) 205-3564

OF COUNSEL:

THOMAS R. BARKER
Acting General Counsel

JANICE L. HOFFMAN
Associate General Counsel

United States Department of Health
        and Human Services

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JEANETTE K. COAKLEY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:08-cv-00976 (EGS) |
| | ) | |
| CIGNA GOVERNMENT SERVICES, | ) | **ECF** |
| LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER

      Upon consideration of Defendants' Motion to Dismiss, and the entire record herein, it is

this _____ day of _____, 2008, hereby

      ORDERED that the Motion to Dismiss is GRANTED, and it is

      FURTHER ORDERED that the complaint is dismissed for lack of subject matter

jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

                                _____

                                EMMET G. SULLIVAN
                                UNITED STATES DISTRICT JUDGE

Copy to:  ECF Counsel

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard
Baltimore, Maryland 21244-1850



JSM/TDL-08351, 06-11-08

---

**MEMORANDUM**

**DATE:**        June 11, 2008

**FROM**:        Director, Coverage and Analysis Group
                 Office of Clinical Standards and Quality

                 Director, Medicare Contractor Management Group
                 Center for Medicare Management

**SUBJECT:**  Levalbuterol

**TO:**          All Durable Medical Equipment Medicare Administrative Contractors
                 (DME MACs)


In December 2007, Congress enacted the Medicare, Medicaid and SCHIP Extension Act of 2007 (MMSEA). Section 112(b) of MMSEA (which added section 1847A(b)(7) of the Social Security Act) provides that the average sales price (ASP)-based payment rate for single source inhalation drugs that are treated as multiple source under the grandfathering provision is the lower of the payment amount determined when the grandfathering clause is applied or when the grandfathering clause is not applied. Section 112(b) also provides that the ASP-based payment rate for multiple source inhalation drugs is the lower of the amount determined taking the grandfathering clause into account, or not applying the grandfathering clause.

Section 112(b) of MMSEA is drafted to apply to a very specific subset of drugs reimbursed under the ASP methodology. By its terms, it applies only to those inhalation drugs or biologicals furnished through an item of durable medical equipment that the ASP grandfathering clause affects. Due to the specificity of section 112(b), and the implications that it may have on how the Centers for Medicare & Medicaid Services (CMS) pays for certain drugs, CMS would like to review this provision further. In the interim, contractors shall withdraw the least costly alternative (LCA) policies for levalbuterol until receipt of further guidance from CMS.

**NOTE: MEDICARE ADMINISTRATIVE CONTRACTORS (MACs)**

**DME MAC Contract Numbers**

Jurisdiction A ~ HHSM-500-2006-M0001Z
Jurisdiction B ~ HHSM-500-2006-M0002Z
Jurisdiction C ~ HHSM-500-2006-M0006Z
Jurisdiction D ~ HHSM-500-2006-M0004Z

**This Joint Signature Memorandum is being issued to you as technical direction under your MAC contract and has been approved by your Project Officer. This technical direction is not construed as a change or intent to change the scope of work under the contract and is to be acted upon only if sufficient funds are available. In this regard, your attention is directed to the clause of the General Provisions of the contract entitled Limitation of Cost, FAR 52.232-20. If the Contractor considers anything contained herein to be outside of the current scope of the contract, or contrary to any of its terms or conditions, the Contractor shall immediately notify the Contracting Officer in writing as to the specific discrepancies and any proposed corrective action.**

Should you require further technical clarification, you may contact your Project Officer. Contractual questions should be directed to your CMS Contracting Officer. Please copy the Project Officer and Contracting Officer on all electronic and/or written correspondence in relation to this technical direction letter.


/s/                                        /s/
Steve E. Phurrough, MD, MPA           Karen Jackson


cc: **(JSM/TDL-08351 has been approved by the MAC Project Officers)**
Andrew Conn, National Heritage Insurance Company
Edmund Kedzierski, National Heritage Insurance Company
David Barnett, National Government Services, Inc
Joel Allegier, National Government Services, Inc
Melissa Kirchenbauer, CIGNA Government Services, LLC
Robert Madgett, CIGNA Government Services, LLC
Emy Stenerson, Noridian Administrative Services
Karla Thormodson, Noridian Administrative Services
All RAs
Nanette Foster Reilly, Consortium Administrator for Financial Management and
   Fee-for-Service Operations
Kathy Markman, OAGM
Linda Hook, OAGM
Linda Gmeiner, OAGM
David Wetherson, OAGM
Marybeth Jason, CMM/MCMG
Larry Young, CMM/MCMG
Jeff Hinson, CMM/MCMG
Pat Williams, Eastern Program Director
John Delaney, Southern Program Director
Jody Kurtenbach, Acting Western Program Director

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard
Baltimore, Maryland 21244-1850



JSM/TDL-08351, 06-11-08

**MEMORANDUM**

**DATE:**        June 13, 2008

**FROM**:         Director, Coverage and Analysis Group
                  Office of Clinical Standards and Quality

                  Director, Medicare Contractor Management Group
                  Center for Medicare Management

**SUBJECT:**  Levalbuterol -- CORRECTION

**TO:**           All Durable Medical Equipment Medicare Administrative Contractors
                  (DME MACs)

In December 2007, Congress enacted the Medicare, Medicaid and SCHIP Extension Act of 2007 (MMSEA). Section 112(b) of MMSEA (which added section 1847A(b)(7) of the Social Security Act) provides that the average sales price (ASP)-based payment rate for single source inhalation drugs that are treated as multiple source under the grandfathering provision is the lower of the payment amount determined when the grandfathering clause is applied or when the grandfathering clause is not applied. Section 112(b) also provides that the ASP-based payment rate for multiple source inhalation drugs is the lower of the amount determined taking the grandfathering clause into account, or not applying the grandfathering clause.

Section 112(b) of MMSEA is drafted to apply to a very specific subset of drugs reimbursed under the ASP methodology. By its terms, it applies only to those inhalation drugs or biologicals furnished through an item of durable medical equipment that the ASP grandfathering clause affects. Due to the specificity of section 112(b), and the implications that it may have on how the Centers for Medicare & Medicaid Services (CMS) pays for certain drugs, CMS would like to review this provision further. Contractors shall withdraw the least costly alternative (LCA) policies for levalbuterol and shall take no further action before December 31, 2008. Contractors shall take no further action thereafter, until receipt of further guidance from CMS.

**NOTE: MEDICARE ADMINISTRATIVE CONTRACTORS (MACs)**

**DME MAC Contract Numbers**

Jurisdiction A ~ HHSM-500-2006-M0001Z
Jurisdiction B ~ HHSM-500-2006-M0002Z
Jurisdiction C ~ HHSM-500-2006-M0006Z

Jurisdiction D ~ HHSM-500-2006-M0004Z

2

**This Joint Signature Memorandum is being issued to you as technical direction under your MAC contract and has been approved by your Project Officer. This technical direction is not construed as a change or intent to change the scope of work under the contract and is to be acted upon only if sufficient funds are available.  In this regard, your attention is directed to the clause of the General Provisions of the contract entitled Limitation of Cost, FAR 52.232-20.  If the Contractor considers anything contained herein to be outside of the current scope of the contract, or contrary to any of its terms or conditions, the Contractor shall immediately notify the Contracting Officer in writing as to the specific discrepancies and any proposed corrective action.**

Should you require further technical clarification, you may contact your Project Officer. Contractual questions should be directed to your CMS Contracting Officer.  Please copy the Project Officer and Contracting Officer on all electronic and/or written correspondence in relation to this technical direction letter.

/s/                                        /s/
Steve E. Phurrough, MD, MPA                Karen Jackson

cc: **(JSM/TDL-08351 has been approved by the MAC Project Officers)**
Andrew Conn, National Heritage Insurance Company
Edmund Kedzierski, National Heritage Insurance Company
David Barnett, National Government Services, Inc
Joel Allegier, National Government Services, Inc
Melissa Kirchenbauer, CIGNA Government Services, LLC
Robert Madgett, CIGNA Government Services, LLC
Emy Stenerson, Noridian Administrative Services
Karla Thormodson, Noridian Administrative Services
All RAs
Nanette Foster Reilly, Consortium Administrator for Financial Management and
   Fee-for-Service Operations
Kathy Markman, OAGM
Linda Hook, OAGM
Linda Gmeiner, OAGM
David Wetherson, OAGM
Marybeth Jason, CMM/MCMG
Larry Young, CMM/MCMG
Jeff Hinson, CMM/MCMG
Pat Williams, Eastern Program Director
John Delaney, Southern Program Director
Jody Kurtenbach, Acting Western Program Director